## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

STEVEN M. McCARTHY,      )    Case No.:  24-cv-14322-AMC
                         )
         Plaintiff,     )    **COMPLAINT FOR DAMAGES,**
                         )    **DECLARATORY AND**
vs.                     )    **INJUNCTIVE RELIEF**
                         )
FACEBOOK, INC.; a Delaware   )
Corporation; META, INC., a Delaware )
Corporation; MARK ELLIOTT   )
ZUCKERBERG, an individual; and DOES )
1-50, inclusive.          )
                         )
        Defendants.    )

FILED BY _WC_ D.C.

SEP 2 7 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. PIERCE

## I
## INTRODUCTION

1.   This is an action for damages for the tortious deletion and cancellation of Plaintiff's Facebook account, for conversion of personalty, bad faith violation of Plaintiff's First Amendment rights and freedom of association, for intentional infliction of emotional distress, elder abuse, bad faith breach of contract implied in fact, conspiracy to commit these acts, and for injunctive and declaratory relief to, *inter alia*, require reinstatement of Plaintiff's account and property, along with providing this Court that some changes will be implemented by Defendants to prevent future similar occurrences. Facebook is a principal source for millions, including Plaintiff, to learn of current events, seek employment, speak and listen in the modern public square, and otherwise explore and possibly contribute to the vast realms of human thought and knowledge. Defendants provide perhaps the most powerful mechanisms ever available to a private citizen to make his or her voice

heard. They allow a person with an Internet connection to ''become a town crier with a voice that resonates farther than it could from any soapbox.'' Its power is immense. It is, in operative fact, a public utility, and a state actor for First Amendment purposes.

2.    The United States Supreme Court has recognized the power of social media platforms such as Facebook. "These websites can provide perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard. They allow a person with an Internet connection to ''become a town crier with a voice that resonates farther than it could from any soapbox.'' *Packingham v. North Carolina* 137 S.Ct. 1730, 1737 (2017), relying on *Reno v. American Civil Liberties Union*, 521 U.S. 844, 868, 117 S.Ct. 2329, 138 L.Ed.2d 874. This action is an instance of a genre of opposite and countervailing force to the principal of free speech.

## II
## JURISDICTION AND VENUE

2.    The United States District Court for the Southern District of Florida has original jurisdiction over this action pursuant to 28 U.S.C. §1332 (a)(3). The parties are citizens of different States, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and all of the acts and omissions complained of herein occured within its geographic area.

3.    Defendants, and each of them, are subject to general jurisdiction and specific jurisdiction in Florida. They transact continuous and systematic business in Florida and there committed the conversion and other torts complained of herein, in whole or part. Each Defendant has minimum contacts with Florida such that the exercise of personal jurisdiction over it comports with traditional notions of fair play and substantial justice, and is consistent with the Due Process clause of the United States Constitution, and *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984).

4.    Venue is proper in the Fort Pierce Division of the United States District Court for the

Southern District of Florida pursuant to 28 U.S.C. §1391(b)(1) because all of the acts and omissions subject of this lawsuit occurred within the geographical boundaries of the district.

## II
## PARTIES

5.    Plaintiff, Steven M. McCarthy, is a senior citizen of 75 years of age at this writing, domiciled in the State of Florida, and brings this action against Defendants Meta Platforms, Inc. ("Meta"), Facebook, Inc., ("Facebook"), and their Chief Executive Officer, Defendant Mark Elliott Zuckerberg ("Zuckerberg"), individually, as set forth herein.

6.    Facebook, Inc., is a for-profit corporation first registered in Delaware on July 29, 2004, then registered with the Florida Department of Corporations on January 7, 2011.  Its principal place of business is reputed to be 1601 Willow Road, Menlo Park, California.

7.    Plaintiff is informed and believes and thereon alleges that Meta Platforms, Inc. is a business entity and has registered as a Delaware corporation, but remains of unknown structure, except insofar as it is the alter ego and corporate successor of Facebook.  Its business address registered with the California Secretary of State is 1 Meta Way, Menlo Park, CA 94025.

8.    Both Meta and Facebook function as a single, megalithic public utility.[1]   On October 28, 2021, Facebook, Inc. changed its corporate name to Meta Platforms, Inc., pursuant to an amended and restated certificate of incorporation filed with the Delaware Secretary of State and signed by Defendant Zuckerberg in his capacity as CEO.

9.    Defendant Zuckerberg is reputed to have several residences and thus Plaintiff is ignorant

---

[1]

See *Munn v. Illinois*, 94 U.S. 113 (1876); Spitzer, Elianna, "*Munn v. Illinois*: Supreme Court Case, Arguments, Impact." ThoughtCo, Jun. 25, 2024, thoughtco.com/munn-v-illinois-supreme-court-case-4783274.

of his actual domicile. He is, however, the Chief Executive Officer of both Facebook and its new name, Meta Platforms, Inc.

10. Facebook and Meta utilize and pay for an "Oversight Board" consisting of various individuals around the world.[2]   Plaintiff is informed and believes that Catalina Botero-Marino, Jamal Greene, Michael McConnell, Helle Thorning-Schmidt, Afia Asantewaa Asare-Kyei, Evelyn Aswad, Endy Bayuni, Katherine Chen, Nighat Dad, Suzanne Nossel, Tawakkol Karman, Maina Kiai, Sudhir Krishnawamy, Ronaldo Lemos, Julie Owono, Emi Palmor, Alan Rusbridger, Andras Sajo, John Samples, Nicolas Suzor Paolo Carozza, Khaled Mansour and Pamela San Martin are its current members. Plaintiff has no knowledge or information as to whom of the foregoing are responsible, for the torts of which Plaintiff herein complains; however, will seek to amend this complaint as the facts are divulged in Defendants' discovery responses. All of the foregoing are persons within the meaning of 18 USC §1961(3).

11. Defendants DOES 1 through 50, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to Plaintiff. When their true names and capacities are ascertained, Plaintiff will amend this complaint by inserting their true names and capacities herein. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged; that each was the agent or employee of the named Defendants, and in doing the things herein complained of was acting on behalf of and under the direction of said defendants and with the express or implied consent, permission, authority, and at the instance and direction of each and every other defendant, and that

---

[2]

See http:oversightboard.com/meet-the-board for the governmental and institutional credentials of these persons. Facebook has professed that it no longer pays these members, as of April, 2023.

Plaintiff's damages were proximately caused thereby.

12. In doing the things herein alleged, Defendants, and each of them, named and unnamed, conspired with each remaining Defendant to commit the misfeasances and tortious conduct alleged herein, acted within the course and scope of said conspiracy, in bad faith, and with the express or implied knowledge and consent of one another and each of them. By reason of such conspiracy and concerted effort Plaintiff has been damaged as alleged. Accordingly, Defendants and each of them are liable jointly and severally to Plaintiff.

13. In doing the things complained of herein, Defendants actions and inactions were knowing, conscious, deliberate, intentional, malicious, oppressive, in bad faith and in derogation of Plaintiff's rights under the Constitution of the United States and other relevant enactments; and therefore, Plaintiff is entitled to an award of exemplary and punitive damages against Defendants, and each of them such as shall be determined by the trier of fact or in the discretion of the above-entitled Court in proportion to Defendants' net worth.

## III
## FACTS

14. Facebook conducts business in the State of Florida, throughout the United States, and internationally, with, on information and belief, 3.07 billion monthly active users[3], representing a worldwide market share of 60.91% of social media users, growing by 120.86% over the immediately preceding decade. 2.11 billion users access Facebook daily, accounting for 68.73% of the platform's monthly active users, with a registered total revenue of $134.9 billion in 2023.

---

[3]

A Facebook "User" is an individual who is permitted to create an account on its platform. A User's "page(s)" are a type of message board, wherein the user can post a variety of speech, including their own commentary, videos, photographs, and links to news articles. It is a public space, where others can view, share and where other users can comment on the content on the User's all.

Facebook's average revenue per user was $13.12 in the last quarter of 2023.  Defendant Zuckerberg's income as reported to the California Secretary of State is $24,359,968.  There are 246.73 million Facebook users in the United States accounting for $86.0 billion in total revenue, for a net profit margin of 33.9%, in fiscal year 2020. Research shows that Facebook's most rapidly growing demographic is people over 65, and at least 22.6% of its users, including Plaintiff.

15.  Facebook promotes itself as a service for people "to talk openly about the issues that matter to them, even if some may disagree or find them objectionable."  This could not be farther from the truth.

16.  Facebook has increasingly engaged in impermissible censorship urged in conjunction with congressional legislators and the Executive Branch, including the U.S. Department of Health and Human Services ("HHS") and the Centers for Disease Control and Prevention ("CDC"), threatened detrimental legislative action against it, a misguided reliance upon the Communications Decency Act of 1996, 47 U.S.C. § 230[4], and willful and bad faith participation in joint activity with federal actors. Facebook, along with governmental entities, has so enormously occupied the domain of communication platforms and dominated the exercise of First Amendment rights that it performs a traditional, exclusive public function and ceases to enjoy the immunities for violation of First Amendment rights afforded private entities.  As a state actor, it is responsible for its invasion and suppression of First Amendment rights, including Plaintiff's; and is subject to judicial scrutiny.

17.  For many years, Plaintiff was an active user of, and depended increasingly on Facebook

---

[4]  Multiple Congress members have suggested for years that the special status afforded by ¶230 should be revoked as to Facebook and other platforms.

for nearly all of his social and family connections.[5]  He had many likeminded Facebook friends and followers, with both civilian and military backgrounds; some known personally his entire life, and others he had never met, but with whom he shared various common interests and opinions, and in a community of mutual support.   Plaintiff often would seek to reaffirm lost personal contacts by finding them on Facebook, and found new friends with similar interests.  In so doing, Plaintiff posted and deposited many personal photographs, portraits of multiple public figures both hero and villain, with their notable quotes; posted and shared subjects of his own personal interests; engaged in conversations about nearly everything that mattered to him including politics, and assumed at all times that the same would be freely accessible.

18.   As an armchair historian, Plaintiff was always intrigued by political cartoons, as they were astutely expressive of contemporary mores, values, and opinions.  A political cartoon is a graphic representation with caricatures of public figures, combining artistic skill, hyperbole and satire in order to either question authority or draw attention to corruption, political violence and other social ills and inequities.  They have appeared in every form of visual media; and been an integral part of American political and social culture well before 1776, often making pointed comment and significant impact on contemporary political and social issues. Some description and examples appear in the following websites, among many others:

https://www.britannica.com/art/caricature-and-cartoon#ref59397;

https://www.theguardian.com/artanddesign/2015/mar/21/satire-sewers-and-states men-james-gillray-king-of-cartoon;

https://www.britannica.com/topic/political-cartoon.

---

5

At some point, Plaintiff had a business account with Facebook, but did not develop it.

19.    The Facebook site allowed for the posting of written material and photographs others could see, use, and comment upon.   Accordingly, Plaintiff occasionally posted memes and comments on current issues, including the following, which are clearly conservative or Republican viewpoints directed at socialism and comparing candidates biographies, and immediately preceded Defendants' conduct:





20.  Plaintiff had no knowledge that Defendants intended to and attempted to influence and control public opinion by  deliberate and malicious repression of its members who did not agree with, or who challenged, criticized, or even commented on, its leftist or liberal fascist agenda, insisting at all times anything other than compliance with its politics would constitute a violation of its "rules and regulations" and would justify retaliation against Plaintiff's exercise of free speech.

21. Recently, Defendants again purported to be a neutral, egalitarian platform and attempted to avoid any confirmation of being a state actor.  In order to divert attention from its aforesaid agenda, and in the likelihood of substantial scrutiny in the next presidential term, Defendants attempted to divert attention away from its own oppressive policies and minimizing its governmental

involvement by implicating and blaming the FBI, alleging that it coerced them into various forms of censorship. In a letter dated August 27, 2024, to Jim Jordan, Chairman of the House Judiciary Committee, (concerning his censorship activities regarding Covid), Zuckerberg represents his "description" of his efforts:

> "Our platforms are for everyone -- we're about promoting speech and helping people connect in a safe and secure way.... As part of this, we regularly hear from governments around the world and others with various concerns around public discourse and public safety."

While neither admitting or denying anything at all, Zuckerberg blames others, like someone with a borderline personality disorder, (or to distract and divert the inevitable legal scrutiny of Defendants' conduct after January 6, 2025), and tries to shift his responsibility by blaming the Biden administration's operatives:

> "In 2021, senior officials from the Biden Administration, including the White House, repeatedly pressured our teams for months to censor certain COVID-19 content, including humor and satire, and expressed a lot of frustration with our teams when we didn't agree. "

22.    The foregoing is a well insulated obfuscation (at minimum), as Defendants have long censored and impaired the free speech rights of conservative Facebook users entirely on their own, and continue to do so behind their left leaning globalist partners' policies and practices, whether or not any public entities participated with it, as discovery will reveal. That Zuckerberg and his entities want to deflect attention away from his own oppressive, bad faith, and tortious conduct is part and parcel of his attempts to limit Americans' constitutional free speech and association rights, including Plaintiff's, and is seminal to Defendants' collective

scienter as alleged herein.[6]

23.    Defendants' interference with free speech, however, has long risen beyond that of private enterprise to that of a state actor (see, e.g., ¶ 21).  Accordingly  in the anticipation that such a megalith of abuse would be held to the same standard as a public entity,   Plaintiff afforded it the same latitude by serving the equivalent of a public entity tort claim notice to Zuckerberg.

24.    The gravity of Defendants' conduct toward their Users, and potentially every citizen's right to free speech and association, cannot be overstated. Defendants' deliberate and intentional disregard of its Users' constitutional rights is no better exemplified than in the matter presently before the Court.

25.    At some point within the six or seven months, Defendant Mark E. Zuckerberg appeared on Plaintiff's Facebook page as a "friend" and without invitation.  Mr. Zuckerberg insisted that he was who he was representing himself to be.  Plaintiff was unaware of any legitimate purpose for his appearance, but had no reason to be displeased because he perceived an opportunity to engage in some meaningful communication with him.

26.    Shortly thereafter, Plaintiff's Facebook account was deleted in bad faith and in violation of Constitutional protections and common law as set forth herein.

27.    On July 25, and again on August 3, 2024, Plaintiff sent emails as many members of Zuckerberg's "Oversight Board" (see Paragraph 5), where email addresses were discoverable,

---

[6]    See https://judiciary.house.gov/media/in-the-news/facebook-ceo-zuckerberg-grilled-over-covid-censorship-by-top-house-republicans: "When a private company, especially one with Facebook's market dominance, suppresses free speech at government's behest, it tramples citizens' constitutional rights."

asking them to reinstate Plaintiff's account and advising them that I intended to pursue available legal remedies upon their failure and refusal to act. Plaintiff never received any response.

28. As a direct and proximate result of the foregoing intentional conduct, Plaintiff was unable to continue his many conversations with his family, friends and followers, as identified in Paragraph 17, and whom were also cut off from their contact with Plaintiff. As Plaintiff ages, his social contacts on Facebook increased in their importance to his emotional state and well-being in general, and without the foregoing, Plaintiff has suffered continuing hedonic damages including anxiety, isolation, depression, and the loss of his many human contacts, all to his general and economic damage such as shall be adduced at the trial hereof.

29. Plaintiff's loss of his status as a user of Facebook, along with the property thereon, constitute damage to Plaintiff in the amount in the sum of $10,000,000.00, inclusive of costs, incidentals, and attorneys fees likely to be incurred at the trial hereof, or such amount as is determined by the Jury.

30. The acts of Defendants complained of herein were knowing, deliberate, intentional, malicious, oppressive, in bad faith, in conscious disregard of Plaintiff's rights; and thus warrant the imposition of damages by way of punishment and example upon each of them, jointly and severally.

## COUNT I
## VIOLATION OF CONSTITUTIONAL RIGHT TO FREE SPEECH
## UNDER THE FIRST AMENDMENT

31. Plaintiff restates the allegations set forth in Paragraphs 1-30 as though fully set forth.

32. Pursuant to the immunity afforded Defendants by Section 230 of the Communications Act, 47 USC §230, Defendants were encouraged by Congress to censor

constitutionally protected speech on the Internet, including by and among Facebook's approximately 246.73 million Facebook users in the United States, including Plaintiff.

33. As such, censorship by Defendants of constitutionally protected free speech is unconstitutional on its face. Using its authority under Section 230(c) together and in concert with federal government actors, the Defendants regulate the content of speech over a vast swath of the Internet, including the silencing of conservative voices among its users, including Plaintiff.

34. Defendants complicity and accession to coercive pressure from the federal government to regulate specific speech renders them a state actor and their bad faith conduct excepts their protection under §230 (see ¶¶21-24).

35. In responding to the aforementioned government actors' demands to regulate the specific speech at issue in this lawsuit, Defendants were acting in concert with federal officials to censor protected speech. Defendants' censorship activities resulting from their willful participation with government actors, as well as responding to congressional coercion, together with their domination of social media, amounts to state action by Defendants.

36. Defendants' canceling of the Plaintiff's Facebook account violates the First Amendment to the United States Constitution because it eliminates the Plaintiff's participation in a public forum and the right to communicate to others Plaintiff's content and point of view by posting political cartoons (see ¶18).

37. Congress authorized Internet platforms under Section 230(c)(2) to censor and impose a prior restraint on speech that Congress was constitutionally forbidden to censor or restrain itself, yet congressional committees and congressional leaders took specific steps using Facebook to coerce enforcement of censorship and prior restraint against political opponents in violation of the First Amendment. This censorship is both a collusive effort between the federal

government and its partner,  Defendants and their agents

38.  The authority Congress gave to Internet platforms under Section 230(c) was

unconstitutional, and Defendants exercised that authority in intentional, reckless, and bad faith

disregard for Plaintiff's First Amendment right to free speech.

39.  Defendants' censoring of the Plaintiff's Facebook accounts violates the First

Amendment as applied in this matter because it imposes viewpoint and content-based

restrictions on the Plaintiff's access to information, views, and content otherwise available to the

general public and Plaintiff's user friends.

40.  Defendants' censoring of the Plaintiff's Facebook accounts violates the First

Amendment as applied in this matter because it imposes a prior restraint on free speech and has a

chilling effect on social media Users and non-Users alike.

41.  Defendants' blocking of the Plaintiff from his Facebook accounts violates the First

Amendment as applied in this matter because it imposes a viewpoint and content-based

restriction on the ability of the Plaintiff to petition the government for a redress of grievances.

42.  Defendants' censoring of the Plaintiff by banning the Plaintiff from his Facebook

account while exercising his free speech was an egregious violation of the First Amendment as

applied in this matter.

## COUNT TWO
## VIOLATION OF CONSTITUTIONAL RIGHT
## TO FREEDOM OF ASSOCIATION

43.  Plaintiff restates the allegations set forth in Paragraphs 1-42 as though fully set forth.

44.  The freedom of association – to interact and join with others as a group to advance

beliefs or ideas– is a fundamental right, considered an essential part of both the Fourteenth and

First Amendment.[7]

45.   Defendants' cancellation of Plaintiff's Facebook pages essentially broke any and all connections with the greater portion of users with whom Plaintiff interacted, associated, and, *inter alia*, shared political humor.

46.   The acts of Defendants to interfere with Plaintiff's right to associate with whomever he wants were knowing, conscious, deliberate, intentional, malicious, oppressive, in bad faith, in abject disregard of Plaintiff's rights; and for the sole purpose of advancing their own leftist political agenda, and thus warrant the imposition of damages by way of punishment and example.

**COUNT III**
**CONVERSION**

47.   Plaintiff restates and incorporates herein by reference the allegations of paragraphs 1 through 30 of this Complaint, as though fully set forth.

48.   Defendants wrongfully removed the entirety of Plaintiff's Facebook pages, converted them to their own use,  wrongfully exercised and assumed authority over them without Plaintiff's consent, wrongfully exerted dominion over them despite Plaintiff's rights and interests; and deleted them in their entirety.

49.   Defendants' actions constitute conversion.

50.   Plaintiff did not ever consent, either expressly or impliedly, to any of Defendants' conduct herein.

51.   Defendants acted with spite, ill-will and malice toward Plaintiff in misappropriating

---

7

See *Americans for Prosperity Foundation v. Bonta*, US Supreme Court No. 19-251, relyin on *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958) and its progeny.

and removing Plaintiff's property.   Plaintiff has no knowledge or belief as to whether or no

Defendants destroyed everything Plaintiff had on his Facebook pages.

52.   As a direct result of Defendants' conversion, Plaintiff suffered damage and incurred

loss, including, but not limited to, loss of business and income, impairment to the condition,

quality and or value of Plaintiff's posts, and has and will become obligated for attorneys fees.

### COUNT IV
### TRESPASS TO CHATTELS

53.   Plaintiff restates and incorporates herein by reference the allegations of paragraphs 1

through 30 of this Complaint, and incorporates them herein by reference as though fully set forth.

54.   Plaintiff has and holds a property interest in his political cartoons, which he has

shared in other social media.

55.   Defendants unlawfully used Plaintiff's property  without  legal  right, authorization

or consent, and profited from such unlawful use in the promotion of its own leftist anti-

conservative agenda, by shutting down Plaintiff's account as aforesaid.

56.   Defendants' acts constitute willful acts of trespass.

57.   As a direct result Defendants' trespass, Plaintiff suffered damage and incurred loss,

including, but not limited to, those alleged in Paragraphs 28-30, inclusive.

### COUNT V
### DECLARATORY JUDGMENT THAT SECTION 230 AND THE COMMUNICATIONS DECENCY ACT ARE UNCONSTITUTIONAL

58.   Plaintiff restates and incorporates herein by reference the allegations of paragraphs 1

through 57 of this Complaint, and incorporates them herein by reference as though fully set forth.

59.   In removing and deleting Plaintiff, Defendants relied upon, acted, and excused

themselves under the shield of Section 230(c) of the Communications Decency Act, and, on information and belief, would not have de-platformed the Plaintiff but for the immunity purportedly offered by Section 230(c).

60.    Section 230(c)(2) purports to immunize social media companies from liability for action taken by them to block, restrict, or refuse to carry "objectionable" speech even if that speech is "constitutionally protected." 47 U.S.C. § 230(c)(2).

61.    In addition, Section 230(c)(1) also has been interpreted as furnishing an immunity to social media companies for action taken by them to block, restrict, or refuse to carry constitutionally protected speech.

62.    Section 230(c)(1) and 230(c)(2) were deliberately enacted by Congress to induce, encourage, and promote social media companies to accomplish an objective—the censorship of supposedly "objectionable" but constitutionally protected speech on the Internet—that Congress could not constitutionally accomplish itself.

63.    Congress cannot lawfully induce, encourage, or promote private persons to accomplish what it is constitutionally forbidden to accomplish.[8]

64.    Section 230(c)(2) is therefore unconstitutional on its face, and Section 230(c)(1) is likewise unconstitutional insofar as it has been interpreted to immunize social media companies for action they take to censor constitutionally protected speech.

65.    Section 230(c)(2) on its face, as well as Section 230(c)(1) when interpreted as

---

[8]        Norwood v. Harrison, 413 U.S. 455 (1973) from the civil rights era, the Court said it is "axiomatic" that the Government may not "induce, encourage, or promote private persons to accomplish what it is constitutionally forbidden to accomplish."

described above, are also subject to heightened First Amendment scrutiny as content- and viewpoint-based regulations authorizing and encouraging large social media companies to censor constitutionally protected speech on the basis of its supposedly objectionable content and viewpoint.

66.    Such heightened scrutiny cannot be satisfied here because: (a) Section 230(c) is not narrowly tailored, but rather a blank check issued to private companies holding unprecedented power over the content of public discourse to censor constitutionally protected speech with impunity, resulting in a grave threat to the freedom of expression and to democracy itself; (b) the word "objectionable" in Section 230(c) is so ill-defined, vague and capacious that it results in systematic viewpoint-based censorship of political speech, rather than merely the protection of children from obscene or sexually explicit speech as was its original intent; (c) Section 230(c) purports to immunize social media companies for censoring speech on the basis of viewpoint, not merely content; (d) Section 230(c) has turned a handful of private behemoth companies into "ministries of truth" and into the arbiters of what information and viewpoints can and cannot be uttered or heard by hundreds of millions of Americans; and (e) the legitimate interests behind Section 230(c) could have been served through far less  speech-restrictive measures.

67.    Accordingly, Plaintiff seeks a declaration that Section 230(c)(1) and (c)(2) are unconstitutional on their face insofar as they purport to immunize Defendants from liability for actions they take to censor constitutionally protected speech.

68.    Accordingly, the Plaintiff on behalf of himself and Putative Class Members also seeks a declaration that Section 230(c)(1) and Section 230(c)(2) are unconstitutional as applied

to this matter insofar as they purport to immunize Defendants from liability for the actions taken against Plaintiff to censor his constitutionally protected speech.

**COUNT VI**
**INJUNCTIVE RELIEF FOR**
**VIOLATION OF FLORIDA DECEPTIVE**
**AND UNFAIR TRADE PRACTICES ACT**

69.    Plaintiff restates and incorporates herein by reference the allegations of paragraphs 1 through 68 of this Complaint, and incorporates them herein by reference as though fully set forth.

70.    Defendants are engaged in and operate as a social media platform pursuant to Florida Statutes §501.2041(1)(g) within the State of Florida, and are subject to Florida's Deceptive and Unfair Trade Practices Act .

71.    Plaintiff has been aggrieved as a result of Defendants' deceptive and misleading practices as follows:

(a)   Defendants have not published the standards, including detailed definitions, it uses or has used for determining how to censor, deplatform, and shadow ban as required by  §501.2041(2)(a);

(b)   Defendants have not applied censorship, deplatforming, and shadow banning standards in a consistent manner among its users on the platform. as required by §501.2041(2)(b);

(c)   Defendants have failed to inform Plaintiff of its rules changes as required by §501.2041(2)(c);

(d)    Defendants have violated §501.2041(2)(d) in its deplatforming Plaintiff;

(e)    Defendants have failed to provide Plaintiff with the information required by §501.2041(2)(e);

(f) Defendants have failed to comply with as required by §501.2041(2)(f, g);

72. Defendants have repeatedly failed to act in good faith and accordance with their stated policies regarding the removal, demonization, and moderation of content on their platform, including the cancellation of Plaintiff's Facebook account.

73. While Defendants' policies ostensibly proclaim objective, uniform standards by which content may be censored (i.e., flagged, shadow banned, etc.) and Users suspended or banned from the platform, in practice, the Defendants, particularly Mark Zuckerberg, have engaged in a subjective pattern of discriminating against disfavored conservative users, such as Plaintiff.

74. Defendants' actions are in part a response to coercion from government actors who have the capacity to remove or alter the protections currently offered by Section 230 of the Communications Decency Act, 47 U.S.C. § 230, and in other part, at the directive of Mark Zuckerberg, who recognizes the immense power of his platform to direct and shape public opinion.

75. Defendants' actions demonstrate that their ostensibly objective standards omit that content may be removed by Defendants either at will or because government actors demand its removal.

76. These deceptive practices are likely to deceive consumers, including Plaintiff, acting in a reasonable reliance thereon and without knowledge of the interference with the Constitutional rights they will suffer.

77. As detailed above, a reasonable consumer, including Plaintiff, acting under the mistaken belief that the Defendants are equally and fairly applying their content standards, would

be left to presume that they were, and that discussions of political issues is permitted.

78.    Rather, Plaintiff's communications were wrongfully suppressed by Defendants, because Plaintiff's viewpoint was inconvenient.  Defendants' conduct amounts to an abject failure of any fair, good faith, conduct, including their invasion and suppression of Plaintiff's First Amendment rights; all deceiving Plaintiff to his detriment.

79.    Plaintiff, relying on Defendants' good faith application of their standards would not recognize that Defendants have their "finger on the scale" and filter out inconvenient content.

80.    Plaintiff is aggrieved by the Defendants' failure to act in good faith and to apply their stated policies to the Plaintiff's content.

81.    Accordingly, Plaintiff respectfully requests that the Court enter judgment in his favor and grant injunctive relief, restoring the Plaintiff's access to his platform; compelling Defendants to honor Defendants' own policies and the First Amendment to the Constitution of the United States; imposing a monitor to ensure Defendants' compliance therewith, to promulgate, publish, and comply with standards that respect and preserve said rights, and to comply with this Court's order as to such other equitable relief as the Court deems appropriate, and for costs and reasonable attorneys' fees.

82. Further, Plaintiff respectfully requests that the Court enter judgment in his favor and grant an Order for statutory damages of $100,000.00, together with actual damages to be established at trial; punitive damages for Defendants' knowing and willfull acts in violation of this statute and in derogation of their obligation to honor their own policies and standards; injunctive relief allowing the Plaintiff to resume posting content to the Defendants' platform; and to impose a monitor to ensure Defendants' compliance with this Court's order, Defendants' own

standards; for such other relief as the Court deems appropriate and for costs and reasonable attorneys' fees as incurred.

## CONCLUSION AND REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court to enter Judgment against Defendants, and each of them jointly and severally, as follows:

A.    Compensatory damages in the amount of $10,000,000.00 or such greater amount as is determined by the Jury;

B.    Statutory damages as applicable;

C.    Punitive damages in the amount allowed by law or as determined by the Jury sufficient to minimize and arrest further unlawful conduct by Defendants;

D.    Prejudgment interest from the date Defendants cancelled and deleted Plaintiff's account, until the date Judgment is entered at the maximum rate allowed by law;

E.    Postjudgment interest at the maximum rate allowed by law;

F.    Costs and such other relief as is just and proper.

Dated: September 17, 2024                    Respectfully submitted,

/s/ _____

Steven M. McCarthy
156 Sharyon Lane
Jensen Beach, FL   34957
Phone:  (510) 541-4801
Email:  Caractacus@aol.com

*Plaintiff in Propria Persona*

## VERIFICATION

I declare under penalty of perjury that I am a party in the above-entitled matter; that I have read the foregoing document and know the contents thereof; that the same is true of my own knowledge, except as to those matters which are therein stated upon my information and belief, and as to those I believe them to be true; and that this verification was signed on September 17, 2024, at Jensen Beach, Florida.

/s/ _____

Steven M. McCarthy



S68475.040

$3.43
US POSTAGE
FIRST-CLASS
06251250169
34957
000006299

Clerk of the Court
US DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Alto Lee Adams, Sr. Courthouse
101 South U.S. Highway 1, Room #1016
Ft. Pierce, FL 34950

RECEIVED

SEP 27 2024
FTP
CLEARED X-RAY

156 Sharyon Lane
Jensen Beach, FL 34957